IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

COLLEEN E. MCBRIDE,

                Plaintiff,

     v.

COUNTY OF ATLANTIC, NEW JERSEY,
et al.,

                Defendants.

HONORABLE JEROME B. SIMANDLE

Civil No. 10-2773 (JBS-AMD)

**OPINION**

APPEARANCES:

Joseph C. Grassi, Esq.
BARRY, CORRADO, GRASSI & GIBSON, P.C.
2700 Pacific Avenue
Wildwood, NJ 08260

     -and-

Robert D. Herman, Esq.
47 Central Square
Linwood, NJ 08221
      Counsel for Plaintiff

Thomas J. Decker, Esq.
DECKER & MAGAW, ESQS.
507 Westfield Avenue
Westfield, NJ 07090
      Counsel for Defendant, CFG Health Systems, LLC

**SIMANDLE**, District Judge:

**I.  Introduction**

     This matter, involving alleged inadequate medical treatment

for a New Jersey state prisoner as well as alleged violations of

the United States and New Jersey Constitutions, is before the

Court on Defendant CFG Health System LLC's motion for partial summary judgment.  [Docket Item 13.]  Defendant seeks summary judgment only on claims alleging negligent medical treatment. The principal issues are whether Plaintiff has timely complied with N.J. Stat. Ann. § 53A-27, which requires an affidavit of merit for medical malpractice claims, and, if not, whether Plaintiff's medical malpractice claims fall within the common knowledge exception to § 53A-27.

## II.  Background and Facts[1]

Plaintiff, Colleen E. McBride, filed this lawsuit against County of Atlantic, New Jersey, Atlantic County Justice Facility, CFG Health Systems, two nursing employees of CFG as well as several unnamed correctional officers, unknown medical personnel and unnamed corporations.[2]

At the time of the incident, on or about April 1, 2008, Plaintiff was a prisoner at the Atlantic County Justice Facility (ACJF), where she was assigned to the top bunk in her cell. Compl. Count I ¶¶ 4-6.  Because no ladders were provided to go up to and come down from the top bunk, she had to use the existing furniture to climb down to the floor from her bunk.  Id. ¶¶ 8-9.

---

[1] The facts reported below are allegations made by Plaintiff in her Complaint.

[2] The sole defendants that have filed answers are Atlantic County and CFG Health Systems, LLC.

On April 1, 2008,[3] as she used a table to climb down, she slipped and fell onto a bed located on the floor, hitting her chest.  Id. ¶¶ 10-11.  After the accident, Plaintiff went to see Defendant Loeffler, the attending nurse at the medical unit.  Id. ¶¶ 20-21.  Defendant Loeffler provided Plaintiff with an ice pack and some extra-strength Tylenol but denied Plaintiff's request to go to a hospital.  Id. ¶¶ 22-23.  Later that same day, Plaintiff received an X-Ray of her chest at the medical unit.  Id. ¶ 26.

The following day, April 2, Plaintiff was informed she had soft tissue damage and received a second X-Ray.  Id. ¶ 28. Medical personnel advised Plaintiff to continue to apply ice; Plaintiff informed the medical unit that she did not have access to any ice, and they responded that they would bring her some. Id. ¶¶ 29-30.  However, they failed to do so.  Id. ¶ 31.

On April 3, Plaintiff was told that the second X-Ray did not show signs of any fractures.  Id. ¶ 33.  At this time, medical personnel performed a "PulseOx" test on Plaintiff and informed Plaintiff they would conduct a third X-Ray.  Id. ¶ 34.[4]

---

[3] The date of March 31, 2008, for this accident is reported in medical notes attached to Def. Rep. Br., Ex. A.  The difference in date is not material to this motion.

[4] The term "PulseOx" appears to be short for "pulse oximetry," which is a procedure used to measure the amount of oxygen in a person's blood.  See Johns Hopkins Hospital, The Harriet Lane Handbook 635 (Jason W. Custer & Rachel E. Rau eds., 18th ed. 2009), available at http://www.mdconsult.com.

On April 7, Plaintiff was sent back to the medical unit where she saw a physician for the first time since her accident on April 1.  Id. ¶ 45.  The attending physician told Plaintiff that "she would be required to undergo surgery because of the hematoma on her chest" and was scheduled to see an outside doctor, Dr. Alimorad Salartash, the following day, April 8.  Id. ¶ 46.

After Dr. Salartash examined Plaintiff on April 8, he informed her that the hematoma required surgery, which would be performed the next day.  Id. ¶ 47.  During the surgery on April 9, Dr. Salartash discovered an infection underneath the hematoma, and, as a result, Plaintiff was moved by ambulance to Shore Memorial Hospital.  Id. ¶ 48.

Plaintiff ultimately required a second surgery and bone debridement.  Id. ¶ 49-50.  Plaintiff stayed at Shore Memorial Hospital for approximately two weeks and underwent five to six weeks of daily intravenous therapy.  Id. ¶ 51.

In connection with this series of events, Ms. McBride alleges Defendants were negligent in the medical care provided to her.  Additionally, Ms. McBride contends Defendants violated her Eighth Amendment and Fourteenth Amendment constitutional rights as well as her rights under Article I, Paragraphs 1 and 12 of the New Jersey Constitution.  Compl. Count II ¶¶ 6-8, 10, Compl. Count III ¶¶ 6-9, 11, 13, Compl. Count IV ¶¶ 5-7.  She further

alleges that Defendants Atlantic County and ACJF "failed to provide adequate facilities and furnishings for female detainees," which "created a hazardous condition" that led to her injuries.  Compl. Count V ¶¶ 4-5.

Defendant CFG Health Systems moves for partial summary judgment on all state law claims based upon alleged medical malpractice because of Plaintiff's failure to comply with New Jersey's Affidavit of Merit Statute.  Defendant's motion does not seek summary judgment on any claims based on violations of the New Jersey or United States Constitution.  As explained more fully below, because the Court finds that Plaintiff has not complied with New Jersey's Affidavit of Merit Statute and that her medical malpractice claims do not fall within the common knowledge exception, the Court will grant partial summary judgment relating to all state law claims alleging medical malpractice.

## III. Discussion

### A.    Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" only if it might affect the

outcome of the suit under the applicable rule of law. Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary

judgment will not be denied based on mere allegations or denials

in the pleadings; instead, some evidence must be produced to

support a material fact. Fed. R. Civ. P. 56(c)(1)(A); United

States v. Premises Known as 717 S. Woodward Street, Allentown,

Pa., 2 F.3d 529, 533 (3d Cir. 1993). However, the Court will

view any evidence in favor of the nonmoving party and extend any

reasonable favorable inferences to be drawn from that evidence to

that party. Hunt v. Cromartie, 526 U.S. 541, 552 (1999). Where

the nonmoving party bears the burden of persuasion at trial, the

moving party may be entitled to summary judgment merely by

showing that there is an absence of evidence to support an

essential element of the nonmoving party's case. Fed. R. Civ. P.

56(c)(1)(B); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

**B.    Affidavit of Merit**

1.    N.J. Stat. Ann. § 2A:53A-27

In 1995, the New Jersey legislature enacted the Affidavit

of Merit Statute as part of a package of five bills aimed at tort

reform. See generally William Matsikoudis, Tort Reform New

Jersey Style: An Analysis of the New Laws and How they Became

Law, 20 Seton Hall Legis. J. 563 (1996) (providing an overview of

New Jersey's five tort reform laws passed in 1995).  N.J. Stat.

Ann. § 2A:53A-27 provides that:

> [I]n any action for damages for personal injuries
> . . . resulting from an alleged act of malpractice
> or negligence by a licensed person in his
> profession or occupation, the plaintiff shall,
> within 60 days following the date of filing of the
> answer to the complaint by the defendant, provide
> each defendant with an affidavit of an appropriate
> licensed person that there exists a reasonable
> probability that the care, skill or knowledge
> exercised or exhibited in the treatment, practice
> or work that is the subject of the complaint, fell
> outside acceptable professional or occupational
> standards or treatment practices.

The statute also allows the court to grant one 60 day extension

to file the affidavit.  Id.  If a plaintiff does not file an

affidavit, "it shall be deemed a failure to state a cause of

action."  N.J. Stat. Ann. § 2A:53A-29.

The New Jersey Supreme Court has explained that the "overall

purpose of the statute is 'to require plaintiffs in malpractice

cases to make a threshold showing that their claim is

meritorious, in order that meritless lawsuits readily could be

identified at an early stage of litigation.'"  Alan J. Cornblatt,

P.A. v. Barow, 153 N.J. 218, 242 (1998) (quoting In re Petition

of Hall, 147 N.J. 379, 391 (1997)).

In this case, Defendant filed its answer on June 11, 2010.

[Docket Item 4.]  The Plaintiff's affidavit of merit was thus due

on August 10, 2010, or on October 9, 2010 if Plaintiff received a

60-day extension.  Plaintiff did not file an affidavit of merit

until April 4, 2011, as part of her brief in opposition to

Defendant's motion for partial summary judgment.  [Docket Item

18.]  (This affidavit, by Jennifer Miers, R.N., had been served

on March 14, 2011, see Pl. Resp. to Def.'s Statement of

Undisputed Material Facts, ¶ 10.)  Even if Plaintiff had

requested a 60 day extension, this filing would still fall

outside the required period by more than five months.  Further,

under New Jersey law, the late-filed affidavit submitted in

April, 2011, in opposition to Defendant's summary judgment

motion, that was neither created nor served within the 120-day

statutory period, cannot be submitted now in fulfillment of the

statutory requirements.  Kritzberg v. Tarsny, 338 N.J. Super.

254, 259 (App. Div. 2001).  Consequently, the only way

Plaintiff's state medical negligence claims can proceed is if

they fall within the common knowledge exception, discussed below.

> 2.   Common Knowledge Exception

The New Jersey Supreme Court first articulated the common

knowledge exception to the Affidavit of Merit Statute in Hubbard

ex rel. Hubbard v. Reed, 774 A.2d 495 (N.J. 2001).  The Court

explained that "[t]he doctrine applies where 'jurors' common

knowledge as lay persons is sufficient to enable them, using

ordinary understanding and experience, to determine a defendant's

negligence without the benefit of specialized knowledge of experts.'"  Id. at 499 (quoting Estate of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 469 (1999)).  In common knowledge malpractice cases a plaintiff "will not need expert testimony at trial to establish the standard of care or a deviation therefrom."  Id.

The legislative goal of the statute is to "weed out frivolous lawsuits early in the litigation" by having plaintiffs provide an affidavit of merit that avers to the credibility of the claim.  Id. at 500.  Because, in common knowledge cases, "the threshold of merit should be readily apparent from a reading of the plaintiff's complaint," the purpose of the statute has been fulfilled even if an affidavit has not been supplied.  Id. Therefore, the New Jersey Supreme Court ruled that an affidavit of merit is not required in a common knowledge case.  Id.

Nevertheless, the New Jersey Supreme Court cautioned against relying on this exception: "[W]e construe that exception narrowly in order to avoid non-compliance with the statute.  Indeed, the wise course of action in all malpractice cases would be for the plaintiffs to provide affidavits even when they do not intend to rely on expert testimony at trial."  Id. at 501.

In keeping with the New Jersey Supreme Court's guidance to construe the common knowledge exception narrowly, the case

history shows that it has only been applied in exceptionally
obvious cases of medical malpractice.  In Hubbard, a dentist
removed the wrong tooth.  Id. at 498.  In Palanque v. Lambert-
Woolley, decided the same day as Hubbard, defendant, a physician,
twice misread test results, which led to a misdiagnosed ectopic
pregnancy and ultimately unnecessary surgery.  168 N.J. 398, 401-
2 (2001).  In Estate of Chin, defendants, a physician and several
nurses, had misconnected tubes to a hysteroscope.  160 N.J. at
460.  As a result, gas flowed into decedent's uterus instead of
fluid, which caused an embolism.  Id. at 461.  The Supreme Court
of New Jersey held that a jury was entitled to rely on its common
knowledge in determining whether defendants had breached their
duty of care.  Id. at 470.  In Bender v. Walgreen Eastern Co.,
Inc., defendant pharmacist filled a prescription with the
incorrect drug.  399 N.J. Super. 584, 588 (App. Div. 2008).

A few examples of cases which did not warrant a common
knowledge exception make the obviously negligent quality of the
above cases even more apparent.  In Lazerson v. Balthaser,
Plaintiff underwent a thallium stress test, which required her to
walk on a treadmill.  No. 5175-06, June 10, 2009, N.J. Super. Ct.
App. Div., 2009 WL 1617853, at *1.  The treadmill's speed and
incline apparently increased quickly and unexpectedly, which led
to plaintiff being thrown from the treadmill.  Id.  The Court

found that a jury could not rely on its common knowledge to evaluate the claim because it involved a medical procedure that used "sophisticated medical equipment, which was performed by a licensed professional." Id. at *3. Jurors lacked knowledge of the appropriate settings for the test (i.e., the proper speed, the proper incline, how quickly and by how much the speed and incline should be adjusted). Id.

In Isshak v. Eichler, plaintiff, at defendant's urging, underwent emergency eye surgery to reattach a detached retina in his right eye, which resulted in double vision and an eye infection in plaintiff's right eye. No. 2734-08, Mar. 22, 2010 N.J. Super. Ct. App. Div., 2010 WL 1030058, at *1. The Court ruled that expert testimony would be necessary because "[i]t is only through expert testimony that a jury may be apprised of any risks inherent in retinal surgery." Id. at *2.

Finally, in D'Amico v. Jersey Shore University Medical Center, a physician left a pebble inside plaintiff's knee during surgery. No. 5324-07, Aug. 10, 2009, N.J. Super. Ct. App. Div., 2009 WL 2426339, at *1. This too did not fall under the common knowledge exception because "some objects may safely be left in tissue, and it may be more harmful to remove an object than to leave it in." Id. at *2.

Plaintiff makes much of the United States District Court's opinion in Jackson v. Fauver, 334 F. Supp. 2d 697 (D.N.J. 2004). Jackson, like the current case, involved alleged medical malpractice against prisoners.  However, in Jackson, all of the allegations against defendants simply involved defendants' failure "to provide these plaintiffs with medical care prescribed for them by their treating specialists and to follow the medical instructions of these specialists."  Id. at 743.  The court in Jackson concluded that "[a] reasonable jury would not need the assistance of an expert to conclude that CMS [Correctional Medical Services, Inc.] personnel were negligent," since "[c]ommon sense — the judgment imparted by human experience — would tell a layperson that medical personnel charged with caring for an inmate with a serious medical need should provide this inmate his prescribed treatment in a timely fashion."  Id. (internal quotations and citations omitted).

If this case simply turned on medical personnel refusing to send Plaintiff to the hospital when a physician ordered Plaintiff be sent to a hospital, the outcome would parallel Jackson.  But this case does not involve medical personnel refusing to comply with a physician's instructions.  This case deals with various medical personnel's judgments as to what proper treatment for a hematoma should be in the first place, a question that would

12

undoubtedly require expert testimony.  Further, their decision to conduct numerous X-Rays, a PulseOx test, give Plaintiff Tylenol and have Plaintiff apply ice do not smack of obvious negligence in the way that pulling the wrong tooth or filling a prescription with the wrong drug do.  See Hubbard, 774 A.2d at 498; Bender, 399 N.J. Super. at 588.

Even Plaintiff's allegation that Defendant's employees promised to provide Plaintiff with ice after her injury and then failed to do so (Compl. Count I ¶ 31) misses the mark.  The importance of applying ice in Plaintiff's treatment, or lack thereof, is itself an issue that would require expert testimony.

## IV.   CONCLUSION

Because Plaintiff failed to file an affidavit of merit to support her state medical malpractice claims within 60 days of Defendant's answer, as required by N.J Stat. Ann. § 2A:53A-27, and because Plaintiff's malpractice claims do not fall within the common knowledge exception to § 2A:53A-27, the Court grants the motion of Defendant CFG Health Systems, Inc., for partial summary judgment on all state medical malpractice claims.  The accompanying Order will be entered.


**July 28, 2011**                              **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         United States District Judge

13